Rebecca Pennell appearing on behalf of Rudy Wahchumwah. There's three issues that we raised in the briefs. I wanted to start with the second issue, one of the two sentencing issues, and that is whether or not Mr. Wahchumwah's criminal history score was erroneously inflated because of a conviction for which he did not have an attorney. At the district court level, the argument was that there was no waiver at all, and the district court said, well, it was in writing and that was good enough. On appeal, we've pointed out that what was in writing simply wasn't a waiver. Mr. Wahchumwah was advised of his right to an attorney, but he never waived it, and the Supreme Court is very clear that that's not good enough. What else did you put on in evidence? Did you put on any affidavit or did you make any other showing before the district court, or are you just kind of really bringing this up on appeal? No, no. We put on every single piece of evidence that existed from that state court case, and there was no allegation that the record was incomplete. The allegation was that this was enough. Could you start the clock? The question was, did your client submit an affidavit or anything saying that there was no attorney? He did not have an attorney. We did not submit an affidavit. I mean, we submitted everything that existed. I think we submitted the best evidence. No, but why don't you need to do that?  I mean, the implication there is if you don't put the affidavit is that you're really, you know, something that has sort of the presumption of regularity. You're trying to raise an issue in a vacuum. I mean, commonly people. Well, we have the transcript. We have the transcript. We have the court document. We have everything that's signed to show that there wasn't an attorney. I don't know what more we could have done. An affidavit from your client saying I didn't understand it, I didn't have an attorney, I didn't, you know. And I think the issue would have been different if we were just going to his knowledge. But the Supreme Court requires an explicit waiver. And what we have to do is show evidence that there wasn't an explicit waiver. We did that. There was no explicit waiver on the record. We have a production burden. And a lot of times what's happening is that we've lost transcripts. Or there are no quote records. A person's coming in and saying, well, I didn't have an attorney and the waiver wasn't good enough. Here we presented every single thing. Now, so here's the difficulty. The burden of proof was yours. Correct. And if the record is inconclusive, the person who bears the burden of proof normally loses. Why isn't that general rule true in this case? I guess, well, I would say we produced everything. There's not one thing missing from that record. We know exactly what happened in that case. That's all that we can do. The only one looking at it when you could put something on from your client is that the judge could be looking at it and say, well, the client's not going to say that under penalty of perjury because it's just not true. I guess the client could have reaffirmed what clearly happened. And it's a production burden and it's a burden. It is a burden in the sentencing context that is more likely than not a preponderance burden, not proof beyond a reasonable doubt. We don't have to prove beyond any doubt that there was some side conversation that would have taken place illegally where the defendant off the record waived his right to an attorney. I mean, we know what exactly happened on the transcript. We produced everything that was signed. That's the point. We don't know if there was an attorney. I mean, in misdemeanor cases, it's very chaotic. I mean, it's really difficult to know because sometimes the minutes leave a lot to be desired in terms of what actually happened. Well, this is the frustrating thing that this new argument comes up on appeal. At the district court level, everybody agreed that the record was complete. There was no allegation that was incomplete. And the argument and the finding by the judge was, well, but what he signed was sufficient. And then on appeal, they changed the argument. We produced every single thing that we can. Now, if there had been an argument in the district court that maybe there was something beyond the record that could have happened, again, I think that when you're producing every single thing in the court file, including the transcript, and it's a preponderance standard. I apologize, Your Honor. Words per minute are really high. I apologize. But when it's a preponderance standard, you know, I hear this all the time when we go to jury trial. And, you know, a person is in a car and there's a gun in the car. Nobody saw the defendant touching it. There's no fingerprints. But the defendant's the only one in the car. He owned the car. That's good enough beyond a reasonable doubt sufficiency. Well, I think we understand your argument. I wanted to ask you on – I didn't – you know, I would note that – I'm not sure if you're aware, but in Carview, United States, cert was granted on September 30th, and that's a SORNA case. And I didn't see anything from either of the parties. Are you aware of that? The sixth – I think it's a Seventh Circuit case. That case is very different from our case. That is a retroactivity case. Well, I guess the question – the first question would be, are you aware of that? Yes. All right. And you don't think that it may not bear waiting on the SORNA issue to find out what the Supreme Court says on that issue? It could. The exact question presented is whether or not someone whose travel occurs prior to SORNA. It's a travel case. This is an Indian jurisdiction case, so it's different contextually as far as what the prong is that the government relied on that case to get it into federal court. And in that case, as I understand it, is the travel, everything occurred prior to enactment. The Seventh Circuit has taken a different view from the other circuits on whether or not travel has to take place after enactment. But it also talks about where the conduct occurs relative to how the Attorney General – what the Attorney General's function is and all that. I mean, it really is dealing with the issues that I'm seeing. I mean, we have U.S. v. George here, which an argument could be made that that's problematic for you. And if this case were decided differently than George, that may make a difference. That's true. And, Your Honors, I'm sure you're familiar. I was a counsel in George. I know Your Honor was involved in George. It depends on, I suppose, where the Supreme Court is going. But the specific issue raised doesn't appear to be controlling. I did file a rehearing petition in George, and so there's that as well. But it could be that what the Supreme Court says would have some bearing on the issues. Does George have anything to do with this case? Yes. Yes. The issues raised here are almost entirely the same as the issues raised in George. And I did file a rehearing petition last week in George. Right, which I probably can't talk to you about it because I don't think that's the same lawyer. It is, actually. Oh, well, okay. So then if we were to say that maybe we need to see what the Supreme Court says before we would act on that petition, it would seem that somehow that might have a little bit of a house of cards effect on this particular case. It could. It could, Your Honor. All right. That aside, could we decide the other case? If we decided that we wanted to hold it for SORNA on the SORNA issue here, could we decide the other issues here and wait for the SORNA issue, or should we just wait for everything if we decided we needed to wait? It would be preferable to address the sentencing issues as they would be possibly, probably mooted out if Your Honor waits, and that's always the frustrating issue. With respect to the second sentencing issue, whether or not the courts sufficiently took into account the arguments for mitigation, I do think that I submitted a 28J letter that the Seventh Circuit's decision that I cited, Villegas-Miranda, would indicate that this explanation was not sufficient by the district court. He simply did not address the request for a split sentence at all. And there was an allegation on the record that Ms. Are you dealing with plain error here, though? We are. We are. Does that distinguish it from the Seventh Circuit case? Well, there's also a circuit split with respect to what you have to do to object to a sentence. The Seventh Circuit doesn't require the same level of objection as I read it, and it's interesting that we have a Seventh Circuit judge here to provide some insight. So it's just contextually the same. Where are we? The case law that I've read requires an objection. At the same time, I've read this, cited this Court's precedence to say that plain error in the sentencing context is not overly burdensome. The issue is how we made a showing that this sentence could have been different. And if you look at what Judge Nielsen was doing, one thing he was very concerned by or expressed some concern about was whether or not Mr. Wichomo would have been eligible for halfway house placement, which is what the defense was asking for. Again, this was something that was raised at the sentencing hearing. The defense counsel said, well, if that's what Your Honor is concerned about, we need an evidentiary hearing. I believe that he wouldn't be disqualified from a halfway house placement. The judge said, well, I think that you're wrong, but there was no hearing on it. And we don't know from the record that exists why the district court denied the request for a split sentence. Did the district court think that Mr. Wichomo was not eligible, or did he think that he just didn't merit it? Mr. George is currently the case that I had with Your Honor. He currently lives in a halfway house. We would be able to show that Mr. Wichomo would not be ineligible should we get an evidentiary hearing. It was just simply inaccurate, the proffer, that he would not have been eligible. But there was no sort of finding on that, and because Judge Nielsen didn't say why he wasn't giving a split sentence, we can't tell why he rejected the argument. And the requirement is that the district court state its reasons sufficient to allow for appellate review, and we just don't know. We just don't know, based on the lack of explanation, whether or not there was a mistaken impression as to facts, or whether or not the judge just didn't think Mr. Wichomo was deserving. And if I could, I'd like to reserve the rest of my time. Thank you. Thank you, counsel. Good morning. May it please the Court, Alexander Eckstrom on behalf of the U.S. Attorney's Office for the Appellee United States of America. Your Honor, dealing first with the first issue, the issue of SORNA, it is the government's contention, as we've filed in our supplemental letter, that the case is like George, that we have a 2004 conviction that predates the enactment of SORNA in July of 2006, that the defendant's conduct, which on the facts began no earlier than September of 2007, and in the charging document is alleged to have occurred on or about December 5th of 2007, clearly comes after the Attorney General's interim rule in February of 2007. Well, if George is controlling here, and the Supreme Court has granted cert in Carr and Dixon, should we wait to decide the SORNA issue in this case? An abundance of caution would say that the Supreme Court, even though a narrow issue was granted, could rule more broadly. And so I agree with counsel that the narrow issue deals with the pre-SORNA travel. Is there the potential that the Supreme Court could rule more broadly? Certainly. So the government has no objection to the Court, as the Court indicated, if that may control the issues on George, we're back in the same place. But if we do that, that puts a lot of cases in limbo, though. It does. It's not a desirable place to be. And the government believes that George controls, and on the narrow issue for which cert was granted, it wouldn't change the facts here. What we have is conduct that occurs, the charged conduct occurs entirely after the AG's ruling. And therefore, based on that issue, never the twain shall meet. We should be fine. Counsel, could we move to the misdemeanor conviction? Certainly. First of all, where in the record is the argument about that issue? Where can we find that in the record? There is discussion between the Court and counsel regarding the POD, the possession of drug paraphernalia, 2001, in and around page 64 going on to 65. There's discussion between the assigned AUSA, who is not myself, the Court, and counsel regarding Tovar and how the Tovar case applies. Right. But, I mean, we have a pretty defined issue here. The issue is whether or not there was a waiver of the right to counsel. Yes, Your Honor. So where was that issue joined in the record? And I apologize, perhaps I'm not understanding the Court's question. Here's the difficulty I'm having. Opposing counsel says that the argument that the government is making now is different than the argument that was made in district court. So I'm asking you to show me in the record what argument was made by the government and what argument was made by the defendant regarding the precise issue of counsel, of that misdemeanor conviction being a counseled one. Where is that in the record? I believe that that is to be found in the areas of page 64 and 65. That just talks about Tovar, right? It does, and the discussion is very brief. They talk about the signing of the form. Perhaps a couple of pages earlier there was some discussion about what material has been submitted. I believe that counsel for the defendant discusses the fact that documentation and a taped copy of the proceedings were submitted. But counsel is saying that now you're making the argument that at the time the district court said it's sufficient that he signed a form. And so the district court rested its ruling and the government rested its argument on the fact that the form was signed. And now you're saying that the form, you're not resting your argument on the fact that the form was signed, but on the premise that there was not enough proof that there was a waiver, that there was not a waiver. And there's discussion by the court first on page 64 and 65 discussing the signing of a form. The court later on page 65 discusses the form and references it as a waiver. The court says he signed the form. That's enough. That's enough. So now is that your position, that the signing of the form is enough? It is our position that the record as a whole is insufficient to rebut the presumption of regularity. So it is. But that's not what the district court ruled. The district court ruled he signed the form. The form is not an explicit waiver. Correct. So is it your argument that the signing of a form, even if the form does not contain an explicit waiver, shows that there was a counseled appearance? No, that alone is not sufficient. And it is the sum of this record, because the form itself indicates that the individual was advised of the right to counsel, and then going down lower on the page indicates rights that are given up by entry of the plea. And in this case, the form alone is not sufficient. It is the record before the court and the fact that the defendant never filed an affidavit indicating that he didn't understand his rights. What else is there besides the form in your view? What else in the record militates toward a conclusion that there was a waiver? To find a valid waiver, the defendant must have been advised of the nature of the charge and the potential maximums, which was done by the municipal court judge and was part of the record submitted to the court at the time of the sentencing hearing. But what in the record shows that he actually waived his rights? Only his signature of the plea form. There is nothing expressed. And so we rely on the rule, the fact that he did not submit an affidavit, and that a silent record doesn't overcome the presumption of reliability and regularity of those proceedings. Now, what case, what's your strongest case support for your argument that if the record is silent, you win? That would be United States v. Molloy, 3F 3rd, 1337, that the defendant cannot make the affirmative showing by, quote, merely by pointing to a silent or ambiguous record. Dealing with the third issue, the government believes that a plain error review is appropriate, and the defendant in briefing made much of the comment by the court that the sentence was what the defendant asked for. And I believe the precise words used by Judge Nielsen were that it was consistent with a guideline range sentence, the aforementioned split sentence of 18 months of full confinement, followed by six months in the residential release. Isn't the issue on this point whether the error was plain or not? We believe that in this circuit that it clearly is plain error review because there was no objection at the time. It may be plain error review, but is the error plain? We believe it is not. And the defendant received the sentence within the guideline range. He had the opportunity to make his argument. Is your argument that it's not plain because the Seventh Circuit and the Ninth Circuit state the standard a little bit differently? Yes, and that the Ninth Circuit rule controls. Counsel, may I ask you about the Molloy case? Certainly. Do you have that case? I have the quotation. I do not have the case in front of me, Your Honor. Yeah, it says that the Supreme Court recently ruled that the presumption of invalidity with which a prior case approached a silent or ambiguous record is inapplicable on collateral review. Do you think that makes a difference in this case, that it was talking about collateral review? Do you think this is collateral? Yes, this is a collateral attack on a prior conviction. And this is not direct when one deals with scoring. So the government believes it remains applicable. And so returning to the third issue, in this case, much of the case law cited by the defendant deals where there's a request for a sentence outside the guideline range. In this case, Judge Nielsen indicated that he had received the PSIR. He discussed the factors of 1335A. He listened to the arguments from counsel and, in fact, engaged in a colloquy with counsel on some of the rationale for different sentences. And the only difference between the proposed sentence and the sentence imposed was that he did not grant residential reentry. I have nothing further unless the Court has questions of me. It appears not. You've used your time in any event. Thank you. Judge Rawlinson asked about the Molloy case. That was an ACCA case. And in that case, what the district court had done wrong was assign the wrong burden of proof. He thought that the government had the burden of proving that the convictions were invalid. And so the Ninth Circuit said, no, actually, the defendant has the burden. The court went into detail as to what evidence was presented. There were no affidavits presented. In one case, a transcript was missing. I read the court as saying, you know, you may well satisfy your burden of proof, but because the district court engaged in the wrong standard, we're going to remand this. I don't know what happened on remand, but that's what happened in the Ninth Circuit case, Molloy. Given that the district court at the government conceded, erred in why it denied the reduction, this is a case, I think, for remand. And we can remand, and the government can make the argument that it's making now, and there can be a hearing on that. But because that argument wasn't raised below, the argument was, well, under Tovar, what he signed was good enough. But now the government's conceded that it isn't. There should be a remand for consideration under the appropriate standard. And the same we would submit goes to the request for a split sentence. Thank you. All right, thank you, counsel. Thank you to both counsel. The case you have argued is submitted for decision by the court.
judges: Cudahy, Rawlinson, Callahan